Our next case for argument this morning is Cabrera-Ruiz v. Merrick B. Garland. All right, we are ready now in Cabrera-Ruiz v. Merrick B. Garland. Ms. Espinosa. Good morning and may it please the Court. Your Honor, before I start my argument I want to address, and ask the Court for permission to address my motion, emergency motion regarding the proceeding under a pseudonym, sealing the record, but in particular not to live stream on YouTube. My understanding up until now is that this particular argument is not being live streamed on YouTube. It is certainly being live streamed. Your motion to not do that was denied. The motion to adjudicate it early was denied, but... Look, we do not hold secret oral arguments. All the documents that you yourself filed in this case, use your client's full name. It's a little late to request anonymity on the eve of oral argument when the Court's records already contain the information. We don't try to retroactively create secrecy. Somebody who thinks that there's a reason for anonymity has to act right at the beginning of the case, not after full briefs. The reason arose particularly under... Your other problem, counsel, is that your motion just assumes that everything the immigration judge found is wrong. You can't make that assumption. The immigration judge found that your client's story was not truthful. I assume we're going to go into arguments, but I'll say, just regarding my motion, it arose in light of events that took place in Chicago just days ago that almost kill an individual. So, I'll just make that very clear. But, regarding oral arguments, the I.J. predominantly based his adverse credibility finding on petitioner's answer to one question regarding political and religious persecution at a NICE intake interview. The I.J. very clearly says... Ms. Espinosa, I thought... Maybe I misread the immigration judge's opinion, but I thought the immigration judge based his credibility finding on the various stories your client gave to different folks during different interviews following his arrest. He gave multiple stories as to what happened, why he was selling drugs, who he was selling drugs to, where the drugs were coming from, who he was selling drugs for. This isn't an unusual fact pattern, but I didn't think there was just one little thing that the immigration judge said, ah, not credible. There's three things the immigration judge mentions, Your Honor. But, in particular, he makes it clear that the reason he doesn't believe anything that petitioner experienced in Mexico relates to his answer to that one question, and that's clearly on the record. What's the question? At AR 395, it's a paragraph long. It's a compound question that asks, and I cite to the full question in my brief, do you believe that because of your religious and political reasons, you will be persecuted or tortured if returned to your home country? The correct answer to that question would be no, and that's a problem with a compound question, which this court has very clearly held is improper, and it yields confusing testimony, and, therefore, serious consequences cannot attach to testimony elicited from compound, confusing, and misleading questions. This court held that in U.S. v. Matthews, but, more importantly, this court has held in Dong and Moab that preliminary interviews are not always reliable indicators of credibility. Specifically, and I think this is controlling, this court, following the Second Circuit in Ransomockhire, stated an interview is less reliable if the questions asked are not designed to elicit the details of an asylum, or, in this case, a CAD claim, or if there is poor questioning by the immigration officer, and here we very clearly have that. You can even see the model question. How do you get around the fact that it wasn't just the answer to that question that the immigration judge was relying on, but the judge noted that he had viewed the video from the ICE interview, and based on your client's demeanor during the video and how relaxed he was, the court found, quote, there was not a hint that there was death or torture waiting for you if you go back to Mexico. So it's more than just a question and an answer. It's the demeanor during it as well. The demeanor, which I, watching the video, as I certainly hope the court has done as well, I interpreted it completely differently to begin with. But the court, this is a determination that a court viewing has held, and we would have to find that that determination is clearly erroneous, or maybe there is a different interpretation, maybe you have a different interpretation, but that's not the standard on appellate review. I believe your honor is talking about the standard for asylum cases, not for CAD cases, and so I do want to speak about that. It's the general standard for review of administrative decisions. They have to be enforced if there is substantial evidence. Right? We don't make up, we don't make an independent decision. In credibility determinations, we look at to see if they're supported by substantial evidence or clearly erroneous. That is correct, your honor, but specifically when you're talking about demeanor, how could the demeanor of a petitioner be affected if he did not understand the question any differently from what the officer told him he should understand? The officer said, I'm explaining this to you, this is what I want you to understand from it. If you have religious or political reasons for fearing, then that's what I'm asking you. So, naturally, you think you answer the question right, so your demeanor would not change. But what I do want to make very clear, and Remsen-McIntyre makes this extremely clear, CAD is different than asylum, and an adverse credibility determination may not be a particularly significant aspect of the CAD inquiry. This is Remsen-McIntyre v. Ashcroft, which this court has adopted both in Moab and Dong. And the reason for that is the INA has particular rules about credibility where CAD is controlled by its regulations, a specific regulation. And so, regardless of demeanor, even assuming arguendo, the judge, which is not accurate, but assuming arguendo, the judge was justified in the adverse credibility finding. Remsen-McIntyre says, the regulations require the BIA to consider all evidence of possible torture proffered by the alien, regardless of the way it accords the alien's testimony. But the immigration judge did just that. The immigration judge went on to consider the other evidence besides your client's testimony, in particular, the affidavit from his wife, the information about the uncle's family. He went on to consider all of that. Your Honor, I am using up my rebuttal time. Would you like me to address your question? Please. Okay. He didn't. So what he says very clearly in his decision, and I wanted to point this out, he says, this is the kind of evidence that corroborates what happened to him in Mexico. But it doesn't rehabilitate his testimony. Therefore, I'm going to dismiss it. Rehabilitating his testimony is irrelevant for purposes of a CAD claim, as is very clearly defined by the regulation. Therefore, he was not justifying dismissing it because there's a requirement. The regulation requires that he consider the evidence independently. The only thing the board upheld regarding this is that, for example, Mrs. Robles did not know details about his work with the cartel, which is a completely irrelevant fact. All of this evidence is proof that he had an issue with the cartel, that he was in hiding, that they attacked his family, that they shot at his ankle twice in the chest, that they shot his four-year-old nephew through the head and killing him. Ms. Marshall. I'm going to please the court. I'm Lindsay Marshall on behalf of the Attorney General. The question before the court today is whether the petitioner has made a showing so compelling that no reasonable fact finder would agree with the agency. It found that he lacked credibility because he presented three different stories of how he came to traffic drugs in Chicago and didn't disclose his fear of returning to Mexico, even when asked. And he didn't meet his burden of proving that he would be tortured in Mexico because his fear was based on speculation instead of the record. Petitioner hasn't made the showing that the record compels any different conclusion. Turning first to adverse credibility, petitioner presented three different accounts as to the origin of his trafficking drugs in Chicago. And notably, despite that his application is predicated on his fear of the CJ&G, it doesn't feature in two out of three of them. In 2018, petitioner gave two interviews that gave no indication the CJ&G was involved at all. In the first one, he said his source of the drugs was Claudio Fumijo Akan, who he had just met three to four months prior. And the very next day, he said the source was actually an unknown person that he met through a La Familia associate. It wasn't until 2020, two years later, that the CJ&G enters the story. Then he finally says for the first time, in contradiction of his earlier statement that the CJ&G wasn't involved, that his source was Claudio, who was a part of the New Generation cartel, and more than that, who had threatened the lives of his family. This is material because his application is predicated on this cartel. So his arrest and loss of their drugs would have a direct relation to the likelihood that they would want to harm him. Turning to the question that the immigration officer asked him, I disagree with my colleague's characterization of the question itself. The question is long, but it opens with a direct one. Do you have any fear of persecution or torture should you be removed from the United States? And then the officer provides two examples of what he says are one of many categories or reasons, excuse me, that a person can claim persecution. The question did clearly ask him, did he have any fear of persecution or torture? And the agency found it incredible that he would say no without any hesitation or equivocation, even though he had just finished telling the immigration official about his prior dealings with the CJ&G and his return to the United States. And most notably, even though he went into detail with his past work for that cartel in Mexico, and then his decision to come to the United States again, he never mentions what he now claims predicated that decision to return, that he was hunted down and kidnapped and tortured for 27 days, and only let go when he agreed to murder someone for the cartel. He hasn't identified anything that would compel this court to determine that the agency was wrong in doubting his claim, because these inconsistencies cast a long shadow on his veracity. I'd like to also turn to cap protection on its own. He claims a fear of torture in Mexico for a number of reasons. The reason that is most distinct from the adverse credibility determination is his claim that he might be tortured as a snitch. But in this case, his argument amounts to pointing out dots and asking the agency, and now this court, to intuit the connections between them. His claim begins with a reliance on the fear that the cartel might access a docket, like PACER, or court documents. But he provided no evidence that the cartel actually does things like that. In fact, his own expert witness used the word might when he was talking about the cartel's potential access to these documents. But that's not the only logical leap that he asks us to make. He also asks us to consider that they might realize from those documents that he wasn't prosecuted for the drugs, and they might think that his now three years of incarceration, or detention rather, his reentry conviction and his immigration proceedings are not a sufficient punishment, and they might think that it's a result of some kind of deal that he struck with the U.S. government, and thereby is a snitch. That is a lot of mights. But the petitioner wasn't charged with showing a possibility of torture. He was charged with showing a substantial risk, and today he has to show that that is more than just a plausible story of how this might happen, a story that is so compelling that no reasonable adjudicator could agree that this is speculative. That's not the only speculative basis for his harm. He also bases his fear on his gang tattoos and status as a newcomer to Mexico. But here too, petitioner has not shown that the record compels the conclusion that anyone would find he faces risk of torture for those reasons. In fact, he lived in Mexico from 2008 up until 2015 with those same tattoos and that same status. And he was never subject to any of the pickups that he now fears. In his brief, he argues that, well, conditions are increasingly violent, but that same evidence shows that the violent era of the war on drugs in Mexico began in 2006, and that violent surge beginning in 2007. And again, he lived there without any pickups that he fears now from 2008 to up until 2015. Once again, this claim rests on possibilities, not on substantial risk. His own acts for witness use conditional language. Is life anything other than possibilities, counsel? We have, let's just say, very hazy vision of the future. Yes, that is true. Why do you think it is dispositive that his allegations are possibilities rather than presumably the alternative is certainties? Is relief, is withholding of removal allowed only for certainties? Some possibilities, Your Honor, are stronger than others. Technically, there's a possibility that I could win the lottery, but it's not a very strong one. And what he had to do was show here that the possibility amounts to a substantial risk. He didn't have to show that it's a certainty. I understand an argument that substantial evidence supports a decision that the probability is not high enough to justify withholding of removal. I understand that. But like Ms. Espinoza, you were effectively asking us to make our own decision. Well, it's just a possibility, so why don't you say that? Our question is whether the immigration judge's decision was supported by substantial evidence. Stop. Well, on the contrary, I'm not asking the court to make its own decision as to the possibilities here. I'm trying to point out that the agency already has decided that these possibilities don't amount to a substantial risk. And Petitioner hasn't shown anything that would compel the court to disagree that these possibilities just don't rise to that level. How high a level is that? I think this court has pointed out in previous decisions. I've never understood the phrase rise to the level. It doesn't make any sense. It doesn't conjure up something that you observe in the real world. A probability is not a height or an altitude. Yes, and this court has pointed out before that. You can just say not high enough. I did inartfully phrase it, and I think it's clear the agency, despite my wording, did find that the risks were just not high enough to amount to a grant of cap protection here. Petitioner simply doesn't show anything that compels a contrary conclusion. So if there are no further questions, I'll conclude here. I see no such questions, and so thank you very much. The case is taken under advisement.